The indictment charged that the defendant "feloniously, willfully, and maliciously did set fire to and burn a certain barn then having corn in the same." The proof was that the prisoner maliciously and willfully did set fire to a stable with fodder in it, and that a crib with corn and peas in it, which stood within twenty-six feet of the stable, was partially consumed, but by great exertion was saved from total destruction.
The court charged as to the crib (which he sometimes in the alternative calls a barn), "that if satisfied of the burning of the stable by the prisoner, as it was an unlawful act, the prisoner was responsible for the consequences; and if they (the jury) were satisfied beyond a reasonable doubt that the stable was likely to and did communicate to the crib, and it was thereby burned, they should convict; but they were to be satisfied that by the burning of the stable the burning of the crib was a reasonable probability to follow; in which case the prisoner would be answerable." The defendant's counsel excepted.
Verdict, "guilty." Sentence was pronounced, and defendant appealed.
The bill of exceptions presents for consideration (355) two questions, both of which are of great importance to the community, as well as to the prisoner. The first is, whether the willful and malicious setting fire to the house of another, the burning of which is only a misdemeanor, will become a capital felony if a dwelling-house or barn with grain in it be thereby burned, where such burning is the probable consequence of the first illegal act. Upon this question we concur in the opinion given in the court below, that in such a case the prisoner is guilty of the felonious burning of the dwelling-house or barn, upon the principle that he is to be held responsible for the natural; and probable consequence of his first criminal act. In support of this proposition, the burning of one's own dwelling-house with a malicious and *Page 272 
unlawful intent, furnishes a strong argument from analogy. Such burning is of itself only a high misdemeanor; but if the dwellings of other persons be situated so near to the one burnt that they take fire and are consumed as an immediate and necessary consequence of the first illegal act, it will amount to a felony. See 2 East's Pl. Cr., 1030 and 1031, and Rex v. Probert
and Rex v. Isaac, there cited.
The second question is, whether upon an indictment for the felonious burning of a barn with grain or corn in it the prisoner can be convicted upon proof that he burnt a crib with corn in it. He certainly cannot, unless a barn and a crib mean in law the same thing or the testimony shows that they are in fact the same. The bill of exceptions does not set forth any proof that they are the same, and we are unable to find any authority in the law which pronounces them to be the same. In Webster's Dictionary, a "barn" is said to be "a covered building for securing grain, hay, flax, and other productions of the earth." It is a word known to the English law, and is mentioned in the statute, 23 Hen. VIII, chap. 1, sec. 3, as a house the willful burning of which, while it has grain or corn in it, shall be a felony without the benefit of clergy. A crib, according to Webster, means, in the United States, "a small building raised on posts for storing Indian corn." We are not aware that it is now or ever has been used in that sense in England, and we have (356) not, as yet, seen it used in any of the acts of our Assembly. From this, it seems that a barn and a crib are houses of a different kind, and used, ordinarily, for different purposes, and we learn, unofficially, that they are so known throughout the greater part, if not the whole, of this State. The burning of a crib with corn in it is, then, a different offense from the burning of a barn with corn in it, and a prisoner charged with the latter cannot be convicted, upon proof of his having committed the former. Indeed, the burning of a crib, though it may have grain or corn in it at the time, is not made a felony at all, and it will be for the Legislature to consider whether such a building should not, under similar circumstances, have the protection which is now extended by sec. 2, chapter 34, Revised Code, to barns. This case may, possibly, also suggest to that honorable body that the willful and malicious burning of stables, with the intent to consume and destroy the horses that may be in them, is an offense quite as flagrant as and much more cruel than the burning of either cribs or barns, no matter how much corn or grain they may contain.
PER CURIAM. Venire de novo. *Page 273 
(357)